

FILED

2022 Sep-16  PM 02:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

PATRICK DEWAYNE HALL,          )
                               )
    Petitioner,                )
                               )
v.                             )          **2:19-cv-8032-LSC**
                               )          **2:15-cr-283-LSC-HNJ-1**
UNITED STATES OF AMERICA,      )
                               )
    Respondent.                )

## MEMORANDUM OF OPINION

## I.    Introduction

Pursuant to 28 U.S.C. § 2255 ("§ 2255"), Patrick Dewayne Hall ("Petitioner" or "Hall") filed with the Clerk of this Court a motion to vacate, set aside, or otherwise correct his sentence of 275 months' imprisonment and 20 years' supervised release. (Doc. 1.) The United States responded in opposition to the motion. (Doc. 17.) For the reasons set forth below, Hall's § 2255 motion is due to be denied and the present action dismissed.

## II.    Background

### A.    Charges and Sentencing

On September 24, 2015, Hall and twenty-four co-defendants were charged in

a superseding indictment with a number of drug-related crimes. (Cr. Doc. 17.)[1] The indictment charged Hall on seventeen counts, including: 1) conspiracy to possess with intent to distribute a mixture and substance containing detectible amounts of heroin, cocaine, and cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), (b)(1)(B), and (b)(1)(C) (count one); 2) possession with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (count nine); 3) fourteen counts of using a communication device to facilitate a drug trafficking offense in violation of 21 U.S.C. § 843(b) (counts 33, 35, 36, 58–60, 64–71); and 4) conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(h) and (a)(1)(B)(i) (count 72). (Cr. Doc. 17.) Hall was arrested on August 4, 2016. (*See* cr. doc. 4.) The following day, Roger Appell ("Mr. Appell") entered a notice of appearance as Hall's retained counsel. (Cr. Doc. 5.)

In accordance with a sealed plea agreement, which this Court accepted on January 20, 2016, Hall pleaded guilty to the charges. (Cr. Doc. 522 at 57-58 (sealed).) Pursuant to the plea agreement, Hall agreed to cooperate with the Government, and the Government agreed to file a motion under U.S.S.G. § 5K1.1 or 18 U.S.C. § 3553(e) "requesting a downward departure in the calculation of [Hall's] advisory

---

[1] "Cr. Doc." refers to an entry on the docket sheet in the underlying criminal case, *United States v. Hall*, No. 2:15-cr-00283-LSC-HNJ-1.

guideline sentence" if Hall provided "substantial assistance" as defined in U.S.S.G. § 5K1.1. (Cr. Doc. 160 at 34–36 (sealed).) At Hall's sentencing hearing, this Court adopted the findings of Hall's pre-sentence investigation report ("PSR") to determine that the advisory guideline imprisonment range was 324 months to 405 months. (Cr. Doc. 403 at 50 (sealed); cr. doc. 523 at 38 (sealed).) The Government filed a motion for downward departure under U.S.S.G. § 5K1.1 to request a sentence of 275 months. (Cr. Doc. 523 at 38 (sealed).) After hearing an objection from Mr. Appell, Hall's counsel, requesting a further departure and a statement from Hall himself during Hall's sentencing hearing on June 28, 2016, this Court granted the Government's motion and sentenced Hall to 275 months' imprisonment followed by 20 years' supervised release. (*Id.* at 50–51.) On June 30, 2016, this Court entered judgment against Hall. (Cr. Doc. 414.)

**B.    Appeal**

Hall filed a timely appeal of his sentence on July 12, 2016. (Cr. Doc. 452.) The Eleventh Circuit Court of Appeals granted Hall's motion to appoint new counsel and appointed W. Scott Brower as Hall's appellate counsel. (Cr. Doc. 472; cr. doc. 475.) Mr. Brower filed an *Anders* brief — i.e., a motion to withdraw from further representation of Hall pursuant to *Anders v. California*, 386 U.S. 738 (1967) — which the Eleventh Circuit granted. (Cr. Doc. 604.) The Eleventh Circuit agreed with Mr.

Brower's assessment that Hall's appeal "reveal[ed] no arguable issues of merit" and accordingly affirmed Hall's convictions and sentences. (*Id.*) Hall subsequently filed a petition for a writ of certiorari, which the Supreme Court denied on October 1, 2018. (Cr. Doc. 655.)

### C. § 2255 Proceedings

Hall executed the present § 2255 motion on August 21, 2019, and the Clerk of this Court entered the motion into the record on August 26, 2019.[2] (Doc. 1.) Liberally construing Hall's claims in his 300-plus page § 2255 petition,[3] Hall asserts the following seven arguments of ineffective assistance of counsel upon which he contends that he is due relief:

1. Hall's guilty plea was neither knowing nor voluntary due to Mr. Appell's ineffective assistance of counsel in failing to adequately explain the rights Hall waived by signing the plea agreement. (Doc. 1 at 14–36, 46–56, 111–28, 177–79, 254–64.)

2. Mr. Appell was ineffective for failing to challenge Count 72 of the superseding indictment, which Hall contends was duplicitous and lacked all of the requisite elements. (Doc. 1 at 129–57.)

3. Mr. Appell was ineffective for failing to adequately object to statutory enhancements at the sentencing hearing. (Doc. 1 at 37–45, 57–110, 173–76, 180–248, 265–70.)

4. Mr. Appell was ineffective for withdrawing an objection to the drug

---

[2] Applying the "mailbox rule," the Eleventh Circuit deems a prisoner's § 2255 motion as filed upon the "date that he delivered it to prison authorities for mailing, presumptively, . . . the day that he signed it." *Jones v. United States*, 304 F.3d 1035, 1038 n.7 (11th Cir. 2002) (per curiam).

[3] Because Hall is a *pro se* litigant, this Court liberally construes his pleadings. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).

attribution amount. (Doc. 1 at 74–110.)

5.      Mr. Appell was ineffective for failing to properly advocate for a greater departure than the Government requested in its U.S.S.G. § 5K1.1 motion. (Doc. 1 at 158–72.)

6.      Mr. Appell was ineffective for failing to file a motion to suppress the evidence obtained in an allegedly unlawful search and seizure of Hall's property. (Doc. 1 at 249–53.)

7.      Appellate counsel, Mr. Brower, was ineffective for filing an *Anders* brief with the Eleventh Circuit Court of Appeals. (Doc. 1 at 297–98.)

(Doc. 1.)

In addition, Hall raises several substantive claims upon which he believes that he is due relief under § 2255:

1.      The Government breached the plea agreement on three separate grounds. (Doc. 1 at 271–85.)

2.      This Court failed to properly explain Hall's sentence and how the plea agreement affected Hall's substantive rights. (Doc. 1 at 286–88.)

3.      This Court failed to comply with Rule 11 by failing to ask the Assistant United States Attorney ("AUSA") to present this Court with a factual basis for the charges against Hall. (Doc. 1 at 289–96.)

4.      The search and seizure of Hall's property violated Hall's Fourth Amendment rights. (Doc. 1 at 303–306.)

(Doc. 1.)[4]

---

[4] Hall also requests that this Court appoint counsel to represent him for the present motion. (Doc. 20.) "A plaintiff in a civil case has no constitutional right to appointment of counsel." *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999). Petitions under 28 U.S.C. § 2255 are civil actions. *See Woodford v. Ngo*, 548 U.S. 81, 91 n.2 (2006) ("[H]abeas corpus [is] an original . . . civil remedy for the enforcement of the right to personal liberty, rather than . . . a stage of the . . . criminal

## III.    Timeliness and Non-Successiveness of Hall's § 2255 Motion

The Supreme Court denied Hall's petition for writ of certiorari on October 1, 2018. (Cr. Doc. 655.) Hall filed the instant § 2255 motion on August 21, 2019, within one year after the date in which his conviction became final, making his filing timely. *See* 28 U.S.C. § 2255(f)(1).

Hall is bringing his first § 2255 motion, so it is not "second or successive" within the meaning of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. at §§ 2255(h), 2244(b)(3)(A).

## IV.    Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to 28 U.S.C. § 2255 are limited. A petitioner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that

---

proceedings . . . or as an appeal therefrom.") (alterations in original) (quoting *Fay v. Noia*, 372 U.S. 391, 423–24 (1963), *overruled on other grounds by Wainwright v. Sykes*, 433 U.S. 72 (1977), *and abrogated on other grounds by Coleman v. Thompson*, 501 U.S. 722 (1991)). Accordingly, this Court denies Hall's request for appointment of counsel.

narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988)).

In litigation stemming from a § 2255 motion, "[a] hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the [movant's] allegations are affirmatively contradicted by the record." *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (quoting *Guerra v. United States*, 588 F.2d 519, 520–21 (5th Cir. 1979)). However, an evidentiary hearing is appropriate if, "accept[ing] all of the petitioner's alleged facts as true," the movant has "allege[d] facts which, if proven, would entitle him to relief." *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991) (quoting *Agan v. Dugger*, 835 F.2d 1337, 1338 (11th Cir. 1987) and *Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir. 1989)).

## V.    Discussion

### A.    Ineffective Assistance of Counsel

Hall asserts seven grounds of ineffective assistance of counsel in his § 2255 motion.  All of these assertions are meritless and will be dismissed without a hearing. Claims of ineffective assistance of counsel may be raised for the first time in a § 2255

motion and are therefore not subject to procedural bar for failing to raise them on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). An ineffective assistance of counsel claim has two components: first, the petitioner "must show that the counsel's performance was deficient;" second, the petitioner "must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the first component, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The second component is satisfied only when the defendant shows that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In examining counsel's performance, the Court should be "highly deferential." *Id.* at 689. The Court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* The Court must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*; *see Bell v. Cone*, 535 U.S. 685, 702 (2002) (holding that "tactical decision[s] about which competent lawyers might disagree" do not qualify as objectively unreasonable). A petitioner who seeks to overcome this presumption does not carry his burden by

offering bare accusations and complaints; rather, he "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Where a petitioner fails to show that his counsel's performance fell below an objective standard of reasonableness, the court need not address the issue of prejudice. *See Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000). Where the court does consider this prong, the petitioner must show that counsel's errors were prejudicial and "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. This burden is met by establishing by a reasonable probability that the outcome of the proceeding would have been different but for counsel's errors. *Williams v. Threatt*, 529 U.S. 362, 391–93 (2000); *Strickland*, 466 U.S. at 691.

To establish prejudice in the context of a guilty plea, a movant must establish that, but for his counsel's unprofessional errors, "he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 53, 59 (1985). In the guilty plea context, there is a strong presumption that an attorney's actions are reasonable. *Arvelo v. Sec'y, Fla. Dep't of Corr.*, 788 F.3d 1345, 1348–49 (11th Cir. 2015). "We recognize that in deciding whether to enter a plea, defense lawyers carefully balance both 'opportunities and risks' without fully knowing the strength

of the [prosecution's] case. Therefore, we must, as we do for all *Strickland* claims, afford 'substantial deference' to a lawyer's strategic choices." *Id.* (citing *Premo v. Moore*, 562 U.S. 115, 124 (2011)). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. The defendant must show "that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

As further analyzed below, Hall's counsel at the trial and appellate levels could not have been ineffective for failing to raise these issues because they are all meritless, having no basis in law or fact. Thus, it was reasonable for Hall's counsel to not present the frivolous claims Hall now raises, and Hall cannot demonstrate that the outcome of his sentence nor appeal were adversely affected.

### 1.   Mr. Appell, Hall's Trial Counsel, Did Not Render Ineffective Assistance of Counsel Regarding Hall's Guilty Plea.

Hall's claim of ineffective assistance of counsel regarding an involuntary guilty plea is meritless. Based on a review of the record, this Court finds that Hall freely, knowingly, and voluntarily entered into the plea agreement that the

Government offered. The record, particularly the discussion at Hall's change-of-plea hearing, plainly demonstrates that Hall's decision to accept the plea deal was well informed and of his own volition.

The majority of Hall's argument suggests that his first opportunity to consider both the Guilty Plea Advice of Rights Certification ("Explanation of Rights Form") and the plea agreement was at the change-of-plea hearing, resulting in Mr. Appell rendering ineffective assistance and "coercing" Hall into signing the plea agreement. (*See* doc. 1 at 14–36, 46–56, 111–28, 177–79, 254–64.) Hall claims that his statements during the change-of-plea hearing, which repeatedly confirmed his understanding of the plea agreement and his waiver of certain rights contained therein, were "untrue," "coerced," and "a clear result of coercion [and] confusion." (Doc. 1 at 17.) However, Hall fails to allege sufficient facts to overcome the presumption of truth regarding his statements during the plea colloquy. *See United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made during the colloquy are true.") (citing *United States v. Gonzalez-Mercado*, 808 F.2d 796, 799–800 n.8 (11th Cir. 1987)).

Hall asserts that this Court provided him only two minutes to read and consider the Explanation of Rights Form during the change-of-plea hearing, during which time Mr. Appell failed to explain any of the form's terms or the consequences

of signing it. (Doc. 1 at 15–18.) The following exchange occurred with respect to

Hall's opportunity to read and sign the Explanation of Rights Form:

> THE COURT: . . . Are you ready? Has [Hall] signed that [Explanation of Rights] form?
>
> . . . .
>
> MR. APPELL: He has not signed it yet. He read it last night. I have not gone over it and I wasn't able to talk to him when you were going through this. Can we have like two minutes?
>
> THE COURT: Yeah; sure. Take your time. I will wait for you. Go ahead and talk to him.

(Cr. Doc. 522 at 11 (sealed).) Mr. Appell's statement that Hall had the Explanation

of Rights Form the night before the change-of-plea hearing refutes Hall's contention

that Hall saw the form for the first time at the hearing. Additionally, the record

directly refutes Hall's claim that this Court literally allowed him and Mr. Appell only

two minutes to review the form. In actuality, Hall spent over four minutes reviewing

the form, and this Court only resumed questioning him with respect thereto when

he, of his own initiative, indicated that he had finished reviewing it.[5] Thereafter, this

Court confirmed Hall's understanding of the Explanation of Rights form through the

following exchange:

> THE COURT: There is a document your attorney just completed with

---

[5] The undersigned has examined the sealed audio recording of Hall's change-of-plea hearing and confirmed that Hall spent approximately four minutes and twenty-two seconds reviewing the Explanation of Rights form. During that time, no individual in the courtroom made a statement, much less indicated that Hall had a limited time to review the form or needed to rush.

you that's right there beside you. It's an explanation of rights form. It's called a guilty plea advice of rights certification.

Do you see that?

DEFENDANT HALL: Yes, sir.

THE COURT: Did you just initial it going down each side of the page?

DEFENDANT HALL: Yes, sir.

THE COURT: And did you just place your signature there at the end?

DEFENDANT HALL: Yes, sir.

THE COURT: Did you read that document?

DEFENDANT HALL: Yes, sir.

THE COURT: And did your lawyer go over it with you as well?

DEFENDANT HALL: Yes, sir.

THE COURT: Based upon all that, do you understand the rights and the information that are contained in that document?

DEFENDANT HALL: Yes, sir.

(Cr. Doc. 522 at 12–13 (sealed).) Hall fails to allege any facts that would discredit his own sworn testimony.

After Hall affirmed that he had read and understood the Explanation of Rights Form, this Court nevertheless explained Hall's right to a jury trial, the Government's burden of proof if Hall did choose to go to trial, Hall's rights at trial, Hall's freedom to choose how to plea, and the rights Hall would waive by pleading guilty. (*Id.* at 16–19.) Subsequently, this Court described in detail each of the charges

against Hall and each element the Government would need to prove to convict him, confirming Hall's understanding after describing each charge. (*Id.* at 19–29.) This Court then asked Hall whether Mr. Appell had discussed the sentencing guideline ranges with him, to which Hall responded in the affirmative. (*Id.* at 29–30.) Thereafter, this Court detailed the statutory and sentencing guideline ranges of punishment for each of Hall's charges. (*Id.*) Importantly, this Court specifically noted that Mr. Appell may or may not have told Hall the correct sentencing guideline range and that Hall could not rely on any estimations of the range until the sentencing hearing. (*Id.*) This Court confirmed that Hall understood the statutory ranges of punishment he was facing with regard to each charge against him. (*Id.* at 42.)

While Hall now alleges that he only agreed to a guilty plea in reliance on Mr. Appell's alleged promise that he would receive a sentence of eighty-seven months' imprisonment,[6] Hall cannot establish prejudice on the mere basis that he had hoped for a lesser sentence. *See, e.g.*, *Tahamtani v. Lankford*, 846 F.2d 712, 714 (11th Cir. 1988) ("In light of the fact that [the defendant] knew that there was a possibility that he could receive the sentence that was imposed, his disappointment with the result is not grounds to set aside the guilty plea."); *United States v. Bradley*, 905 F.2d 359, 360 (11th Cir. 1990) ("To the extent that Bradley claimed his guilty plea was based

---

[6] (Doc. 1 at 51–52.)

on his attorney's estimate of the sentence and offense level, the claim did not warrant withdrawal of the guilty plea where Bradley acknowledged to the court that he understood the possible maximum sentence for his crime to be greater than the sentence the court ultimately imposed."); *Cruz v. United States*, 188 F. App'x 908, 914 (11th Cir. 2006) (per curiam) (holding that the petitioner failed to demonstrate any prejudice resulting from allegedly ineffective assistance of counsel because she "was informed of her rights and disavowed any problems with counsel at the plea hearing" and "never mentioned that her counsel had coerced her into pleading guilty or assured her that she would receive a lesser sentence"). As discussed above, Hall's lengthy discussion with this Court during the plea colloquy demonstrates that he was well aware that he might receive a longer sentence. (*See* cr. doc. 522 at 29–30 (sealed).)

Finally, this Court addressed the plea agreement. (Cr. Doc. 522 at 42 (sealed).) This Court noted that Hall had read but not yet signed the plea agreement and accordingly allowed Hall and Mr. Appell to go to a different room to discuss the agreement. (*Id.* at 42–43.) After taking the pleas of two other co-defendants, the Court recessed briefly. (*Id.* at 43.) Upon returning, Mr. Appell stated that he and Hall were about halfway through discussing the plea agreement. (*Id.* at 52–53.) This Court responded that Hall needed to finish going through the plea agreement with

Mr. Appell and instructed Mr. Appell to do so, again calling a recess. (*Id.* at 52–53.)

After the recess, the Court questioned Hall regarding his understanding of the plea

agreement as follows:

> THE COURT: . . . In front of you is a document that has been filed that purports to be a plea agreement with the Government. Have you seen that document before?
>
> DEFENDANT HALL: Yes.
>
> THE COURT: In fact, it looks like you have initialed it on each page and signed it in a few spots.
>         Have you done that?
>
> DEFENDANT HALL: Yes, sir.
>
> THE COURT: Did you read that document?
>
> DEFENDANT HALL: Yes, sir.
>
> THE COURT: And did your lawyer go over it with you as well?
>
> DEFENDANT HALL: Yes, sir.
>
> THE COURT: Does that document state all of the agreement you have with the Government?
>
> DEFENDANT HALL: Yes, sir.
>
> THE COURT: Are there any side deals that are not included in that document?
>
> DEFENDANT HALL: No, sir.
>
> THE COURT: Okay. Turn, if you will, to page 34 and tell me if that's your signature. That's the one you would have just done.
>
> DEFENDANT HALL: Yes, sir.
>
> THE COURT: When you signed it there, were you acknowledging,

stipulating, and agreeing that the factual basis that precedes your signature is true and correct and I should rely upon it?

DEFENDANT HALL: Yes, sir.

THE COURT: Page 39 looks like your signature. Is that your signature on page 39?

DEFENDANT HALL: Yes, sir.

THE COURT: When you signed it there, were you acknowledging that you had waived or given up your right to appeal or to file a post conviction petition?

DEFENDANT HALL: Yes, sir.

THE COURT: And then turn to page 51 and tell me if that's your signature that's at the end of the document there.

DEFENDANT HALL: Yes, sir.

THE COURT: Does this document state all of the agreement you have with the government?

DEFENDANT HALL: Yes, sir.

THE COURT: Are there any side deals that are not included in this document?

DEFENDANT HALL: No, sir.

. . . .

THE COURT: Has anybody threatened you, forced you, or coerced you in any way to get you to plead guilty?

DEFENDANT HALL: No, sir.

THE COURT: Are you wanting to plead guilty because you are guilty?

DEFENDANT HALL: Yes, sir.

. . . .

THE COURT: All right. Mr. Hall, this is the time when I am going to ask you how you plead. I am prepared to accept your guilty plea. But if you don't want to plead guilty, we can go to trial. Okay?

DEFENDANT HALL: Yes, sir.

THE COURT: Even though you have signed these documents. Do you understand that?

DEFENDANT HALL: Yes, sir.

THE COURT: But if you plead guilty when I ask you in just a minute, then you will be found guilty and you will no longer have a right to trial. Do you understand that?

DEFENDANT HALL: Yes, sir.

THE COURT: Okay. Do you have any questions you want to ask me before I ask you how you plead?

DEFENDANT HALL: No, sir.

(Cr. Doc. 522 at 53–57 (sealed).)

Hall's sworn statements to the Court with respect to the plea agreement wholly refute his claim that he lacked an adequate understanding thereof. Indeed, Hall specifically denied that anyone had threatened, forced, or coerced him to accept the plea deal. (*See id.* at 56.) This Court's exchange with Hall during the change-of-plea hearing demonstrates that Hall entered into the plea agreement both knowingly and voluntarily.

Perhaps most contradictory to Hall's allegations of coercion is the fact that Hall never sought to withdraw his guilty plea. "[T]he time between entry of the plea

and motion to withdraw the plea may be indicative of defendant's motivation." *Gonzalez-Mercado*, 808 F.2d at 801. "A swift change of heart is itself strong indication that the plea was entered in haste and confusion." *Id.* (quoting *United States v. Barker*, 514 F.2d 208, 222 (D.C. Cir. 1975) (en banc)). Here, Hall raised no concerns with respect to either his guilty plea or Mr. Appell's performance until after receiving his sentence.[7] Hall's failure to raise any concerns with his guilty plea in the months following his change-of-plea hearing strongly undermines any argument that he entered the plea as the result of pressure or confusion.

Hall summarily asserts that there is a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial but for Mr. Appell's failure to properly explain the terms of the Explanation of Rights Form or the plea agreement. (*See, e.g.*, doc. 1 at 29.) However, Hall's testimony during the plea colloquy that he was not coerced into pleading guilty and that he was guilty of the charges to which he pled guilty undermines any allegations of prejudice. *See McNair v. United States,* No. 19-12095-G, 2020 WL 2950548, at *2 (11th Cir. Jan. 13, 2020). To the extent that Hall argues that Mr. Appell failed to adequately apprise him of the rights he would waive by pleading guilty, this Court addressed the topic in detail throughout the colloquy and repeatedly confirmed Hall's understanding.

---

[7] Hall entered his guilty plea on January 20, 2016. (Cr. Doc. 522 at 1 (sealed).) Hall received his sentence over five months later on June 28, 2016. (Cr. Doc 523 at 1 (sealed).)

Consequently, Hall has failed to demonstrate any prejudice resulting from Mr. Appell's allegedly deficient assistance.

> **2.    Mr. Appell Was Not Ineffective for Failing to Challenge Count 72 of the Superseding Indictment.**

Hall contends that Mr. Appell was ineffective for failing to challenge Count 72 of the superseding indictment on the grounds that it "was duplicitous and lack[ed] the concealment element." (Doc. 1 at 129.) Count 72 of the superseding indictment charged Hall with conspiracy to violate 18 U.S.C. § 1956(a)(2)(B)(i). (Cr. Doc. 17-1 at 15–19.) To begin with, the indictment was not duplicitous. An indictment may charge in a single count a conspiracy to commit multiple crimes; the conspiracy itself is the crime, irrespective of its numerous criminal objects. *Braverman v. United States*, 317 U.S. 49, 54 (1942) ("The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute."); *see also, e.g.*, *Frohwerk v. United States*, 249 U.S. 204, 210 (1919) ("The conspiracy is the crime, and that is one, however diverse its objects."). Moreover, the superseding indictment expressly included the concealment element in describing each of the objects of the conspiracy, noting for each that Hall and his co-defendants conspired to conduct financial transactions while "knowing that the financial transaction[s] [were] designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified

unlawful activity." (Cr. Doc. 17-1 at 15–19.) Count 72 of the superseding indictment was neither duplicitous nor lacking the concealment element. Consequently, Mr. Appell's performance was not deficient in failing to challenge the count. As previously discussed, Mr. Appell cannot have been ineffective for declining to raise a non-meritorious objection.

Hall also appears to contend that Mr. Appell was ineffective insofar as he failed to argue that Count 72 lacked a sufficient factual basis or failed to advise Hall to plead not guilty to that count. (*See* doc. 1 at 141–57.) Hall argues that the Government failed to establish that Hall used criminally derived funds in each of the transactions at issue and that Mr. Appell's failure to address such deficiency constituted ineffective assistance. (*Id.* at 149.) Nonetheless, Hall fails to show that Mr. Appell's performance "fell below an objective standard of reasonableness." *See Strickland*, 466 U.S. at 687–88.

The evidence weighs heavily against Hall's factual assertions. Hall claims that all of the funds he used in the transactions at issue were lawfully earned. (*See* doc. 1 at 149–50.) However, the facts set forth in the plea agreement — to which Hall stipulated — provide overwhelming evidence in support of a finding that the funds were criminally derived, including that Hall's expenditures for the transactions at issue exceeded his reported income during the conspiracy. (Cr. Doc. 160 at 27–31

(sealed).) In light of the substantial evidence against Hall, Mr. Appell's decision to advise Hall to plead guilty to the count was objectively reasonable.

### 3.   Mr. Appell Did Not Render Ineffective Assistance of Counsel Regarding Statutory Enhancements to Hall's Sentence.

Hall next contends that Mr. Appell was ineffective for "allowing" the Court to apply both two-point enhancements and a four-point enhancement to the offense levels of three charges against him. (Doc. 1 at 37–45, 57–110, 173–76, 180–248, 265–70.) For the reasons explained below, these arguments are without merit.

First, Hall argues that Mr. Appell failed to object to the Court's allegedly erroneous application of a two-point enhancement to Hall's offense level under U.S.S.G. § 2S1.1(b)(2)(B). (Doc. 1 at 37–45.) Hall is incorrect on both counts. As an initial matter, this Court properly applied the two-level increase. U.S.S.G. § 2S1.1(b)(2)(B) requires a two-level increase to the base offense level for convictions under 18 U.S.C. § 1956. Hall references U.S.S.G. § 2S1.1 application note 2(c), which requires that enhancements under § 2S1.1(a)(1) be determined by the actual money laundering offense rather than the underlying offense from which the laundered funds were derived. (Doc. 1 at 37–45.) However, application note 2(c) applies only to increases under U.S.S.G. § 2S1.1(a)(1), whereas the increase at issue fell under § 2S1.1(b)(2)(B). Hall pleaded guilty to Count 72 of the indictment and

was thus convicted under 18 U.S.C. § 1956, to which U.S.S.G. § 2S1.1(b)(2)(B) applies. (Cr. Doc. 414.) The two-level increase to Hall's offense level was proper with respect to his conviction under 18 U.S.C. § 1956.

Moreover, Mr. Appell's performance was not deficient simply because he did not raise a non-meritorious objection. *See Denson v. United* States, 804 F.3d 1339, 1342 (11th Cir. 2015). "Failing to make a meritless objection does not constitute deficient performance." *Id.*; *see also, e.g., Cave v. Sec'y for Dep't of Corr.*, 638 F.3d 739, 755 (11th Cir. 2011) ("[C]ounsel cannot be labeled ineffective for failing to raise issues that have no merit.") (quoting *Card v. Dugger*, 911 F.2d 1494, 1520 (11th Cir. 1990)); *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (holding that defense counsel did not render ineffective assistance of counsel for failing to object to correct statements of law). As a matter of law, this Court's application of the two-point enhancement to Hall's offense level under U.S.S.G. § 2S1.1(b)(2)(B) was proper, and any objection by Mr. Appell would have thus been overruled. Mr. Appell's decision to refrain from making a baseless objection does not support a finding of deficient performance nor prejudice.

Hall further argues that Mr. Appell's performance was deficient insofar as he "allowed" this Court to overrule his objection to a four-point offense level enhancement under U.S.S.G. § 3B1.1(a). (Doc. 1 at 57–110.) Here, Hall concedes

that Mr. Appell did in fact object to the enhancement, but he suggests that the objection was insufficient because Mr. Appell failed to argue that this Court was improperly relying on evidence outside of the PSR when applying the enhancement. (Doc. 1 at 57–110, 243–48; *see also* cr. doc. 319 at 7–9.) Again, Hall's mistake is twofold. This Court properly applied the four-level enhancement, and Mr. Appell's failure to object to this Court's consideration of facts outside of the PSR does not amount to ineffective assistance.

U.S.S.G. § 3B1.1 requires a four-point increase to a defendant's offense level "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." § 3B1.1(a). "The Government bears the burden of establishing by a preponderance of the evidence the facts necessary to support a sentencing enhancement." *United States v. Askew*, 193 F.3d 1181, 1183 (11th Cir. 1999). "It is the district court's duty to ensure that the Government carries this burden by establishing a sufficient and reliable basis for its request for an enhancement." *Id.* In determining whether the Government has established an adequate factual basis, the sentencing court may itself act as a factfinder and "may consider any evidence, regardless of its admissibility at trial, . . . provided that (1) the evidence has sufficient indicia of reliability, (2) the court makes explicit findings of fact as to credibility, and (3) the defendant has an

opportunity to rebut the evidence." *United States v. Hernandez*, 906 F.3d 1367, 1369 (11th Cir. 2018); *see also United States v. Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010) ("[Eleventh Circuit] precedent squarely holds that sentencing judges may find facts under an advisory Guidelines system so long as the sentence imposed does not exceed the statutory maximum."); *United States v. Booker*, 543 U.S. 220, 233 (2005) ("We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range . . . For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.") (citations omitted).

This Court properly considered relevant evidence as to whether Hall was a leader or organizer of criminal activity such that U.S.S.G. § 3B1.1(a) would be applicable. Notably, Hall submitted a written objection[8] to the PSR's application[9] of the four-level enhancement, and the Government's response[10] laid out a sufficient factual basis in support of the enhancement. Accordingly, the Government satisfied its burden of establishing the facts necessary to support the four-level increase by a preponderance of the evidence.

---

[8] (Cr. Doc. 319 at 7–9.)
[9] (Cr. Doc. 403 at 43 (sealed).)
[10] (Cr. Doc. 381 at 6–9.)

The Government also offered to call Special Agent Wayne Gerhardt to testify as to facts supporting the offense level increase. (Cr. Doc. 523 at 6 (sealed).) Mr. Gerhardt's testimony had sufficient indicia of reliability in light of his seventeen years with the Federal Bureau of Investigations and his role as the lead federal investigator on Hall's case. (*See id.* at 9–10.) This Court, in its discretion to consider any relevant evidence and in the interest of efficiency, declined to hear redundant testimony that Mr. Gerhardt had previously given before the Court in a co-defendant's trial. (*Id.* at 6.) This Court considered Mr. Gerhardt's prior testimony on the issue and found it to be credible, stating that "[i]t is absolutely clear that [Hall] was a leader-organizer in this case." (*Id.*) Furthermore, the Court adopted the factual statements of the PSR,[11] which provided ample support for the Court's conclusion that Hall was a leader-organizer of the conspiracy, including Mr. Gerhardt's finding from the federal investigation that Hall "exercised a greater degree of decision making authority." (*See* cr. doc. 403 at 17, 43 (sealed).) Consequently, the Court properly overruled Hall's objection to the four-level enhancement. (*Id.*)

Hall had at least thirty-five days to review the PSR. (Cr. Doc. 523 at 3 (sealed).) On Hall's behalf, Mr. Appell submitted written objections to the PSR's

---

[11] (Cr. Doc. 523 at 38 (sealed).)

factual findings, which included a specific objection to the four-level increase. (Cr. Doc. 319 at 7–9.) This Court also provided Hall an opportunity to voice any objections to the PSR during the sentencing hearing, and Mr. Appell responded by referencing the written objections.[12] (Cr. Doc. 523 at 3 (sealed).) Prior to pronouncing Hall's sentence, moreover, this Court allowed both Mr. Appell and Hall to make statements "in mitigation or otherwise," thus providing an opportunity to rebut Mr. Gerhardt's testimony. (*Id.* at 40.)

This Court subsequently sentenced Hall to 275 months' imprisonment,[13] a term below the statutory maximum of life in prison. *See* 21 U.S.C. § 841(b)(1)(B). In light of this Court's proper consideration of evidence in determining the applicability of a statutory offense level enhancement, any objection by Mr. Appell on that ground would have been futile. As explained above, Mr. Appell's failure to raise a meritless argument does not constitute ineffective assistance. Moreover, Mr. Appell's decision not to challenge this Court's consideration of evidence outside of the PSR may have been a strategic decision in light of the Government's offer to present

---

[12] For these reasons, Hall's argument that Mr. Appell was ineffective for failing to dispute the facts within the PSR also fails. (*See* doc. 1 at 180–242.) Mr. Appell's performance was not deficient merely because this Court overruled his objections to the PSR. Furthermore, Hall stipulated to any and all facts that affected his sentence as part of his plea agreement. (Cr. Doc. 160 at 4–34 (sealed).) Consequently, as the Government correctly points out, "even if [Mr. Appell] had filed objections consistent with Hall's argument, they would have made no difference in the outcome" of his sentence. (Doc. 17 at 33 n.9 (sealed).) Hall thus fails to demonstrate any prejudice irrespective of the adequacy of Mr. Appell's performance.

[13] (Cr. Doc. 523 at 50 (sealed).)

additional supporting testimony. (*See* cr. doc. 523 at 6 (sealed).) In view of the substantial deference that this Court affords counsels' strategic choices,[14] Mr. Appell's decision in that regard did not rise to the level of "objectively unreasonable." *See Bell*, 535 U.S. at 702.

Furthermore, the findings in the PSR set forth substantively the same facts as to Hall's role in the conspiracy. Hall fails to establish any facts supporting a reasonable probability that excluding Mr. Gerhardt's prior testimony would have affected the Court's decision to apply the two-level enhancement. Hall thus fails to establish any prejudice resulting from Mr. Appell's decision to refrain from objecting to the Court's consideration of Mr. Gerhardt's prior testimony.

Hall's argument that Mr. Appell was ineffective for failing to "properly object" to this Court's application of the two-level enhancement under U.S.S.G. § 2D1.1(b)(12) lacks merit for the same reasons. (*See* doc. 1 at 265–70.) U.S.S.G. § 2D1.1(b)(12) requires a two-level increase to a defendant's base offense level "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." Mr. Appell submitted a written objection[15] to the enhancement and verbally reiterated the objection at the sentencing hearing. (Cr. Doc. 523 at 33–34 (sealed).) Mr. Appell argued that the Government had failed to

---

[14] *See Arvelo*, 788 F.3d at 1348–49.
[15] (Cr. Doc. 328 at 1–2.)

sufficiently prove that manufacturing or distributing drugs was Hall's primary purpose for maintaining the property at issue. (*Id.* at 34.) In determining whether the enhancement was applicable, this Court considered the relevant evidence set forth in the PSR and testimony by Mr. Gerhardt at Hall's sentencing hearing.[16] (*See* cr. doc. 523 at 35–38 (sealed).) This Court found that such evidence contradicted Mr. Appell's contention that Hall had no knowledge of the criminal purposes for which Hall's co-conspirators were using his property, concluding that "[Hall] obviously was using [the property at issue] as a central distribution point or hub for his drugs." (*Id.* at 34–37.) Accordingly, the Court overruled the objection. (*Id.* at 37.) Mr. Appell was not ineffective for declining to renew, on the same grounds, an objection that this Court had already overruled. Furthermore, Hall again fails to plead any facts establishing a reasonable probability of a different outcome had Mr. Appell renewed the objection a third time.

### 4. Mr. Appell Was Not Ineffective for Withdrawing an Objection to the Drug Attribution Amount.

Hall also argues that Mr. Appell rendered ineffective assistance of counsel when he withdrew an objection regarding the drug attribution amount. (Doc. 1 at 74.)

---

[16] As previously discussed, the consideration of evidence outside of the PSR in evaluating the applicability of a sentencing enhancement was properly within this Court's discretion. *See Hernandez*, 906 F.3d at 1369; *Ghertler*, 605 F.3d at 1269; *Booker*, 543 U.S. at 233.

Hall relies on U.S.S.G. § 6B1.4 to argue that Mr. Appell erroneously allowed this Court "to misapply the law by viewing stipulations inside a plea agreement as binding." (Doc. 1 at 75.) Hall's reliance on U.S.S.G. § 6B1.4 is misplaced. U.S.S.G. § 6B1.4 states that a sentencing court is not bound by stipulations included within plea agreements. § 6B1.4(d). "Rather, in determining the factual basis for the sentence, the court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information." U.S.S.G. § 6B1.4 cmt. 3. This Court properly considered the stipulation as to the drug attribution amount in the plea agreement as well as the facts set forth in the PSR. (*See* cr. doc. 523 at 3–5, 38 (sealed).)

First, Hall stipulated to the drug attribution amount as part of his plea agreement with the Government. (Cr. Doc. 160 at 26 (sealed).) During his change-of-plea hearing, Hall further confirmed to this Court that his signature on page thirty-four of the plea agreement was an acknowledgement, stipulation, and agreement that the factual basis preceding his signature was true and correct and that this Court should rely upon it. (Cr. Doc. 522 at 54 (sealed).) The PSR set forth the same drug attribution amount as the plea agreement. (Cr. Doc. 403 at 39, 41, 43 (sealed).) Mr. Appell then submitted a written objection to the factual allegations of the PSR regarding the drug attribution amount. (Cr. Doc. 319 at 1–7.) The Government

submitted a written response to the objection that provided additional supporting evidence of the drug attribution amount. (Cr. Doc. 381 at 1–6.)

At Hall's sentencing hearing, Mr. Appell referenced the written objection to the PSR's factual allegations, and this Court allowed the Government to respond to the objection. (Cr. Doc. 523 at 3–5 (sealed).) The Government initially noted that Hall stipulated to the drug attribution amount in the plea agreement before referencing prior testimony given during the trial of one of Hall's co-defendants and offering to provide additional testimony to support the drug attribution amount. (*Id.*) Following the Government's response to the objection, the following exchange occurred:

> THE COURT: If he is not complying with his plea agreement, then I suppose the Government is not bound to comply with its side of it.
>     Now, is that where y'all are going on this?
>
> MR. APPELL: Can I have a minute?
>
> THE COURT: Certainly.
>
> (BRIEF PAUSE)
>
> MR. APPELL: We'll withdraw that objection, Your Honor.
>
> THE COURT: To the quantity?
>
> MR. APPELL: Yes.
>
> THE COURT: All right. So that objection is withdrawn.

(*Id.* at 5–6.) Mr. Appell apparently consulted with Hall and made a strategic decision

to withdraw the objection in order to ensure that the Government remained bound by the provisions of the plea agreement. In light of the Government's offer to provide additional testimony to support the drug attribution amount and this Court's indication that pursuing the objection would relieve the Government of its obligations under the plea agreement, including filing for a downward departure, Mr. Appell's withdrawal of the objection was objectively reasonable. Mr. Appell cannot be held to have rendered ineffective assistance of counsel for making an objectively reasonable strategic decision. *See Arvelo*, 788 F.3d at 1348–49; *Chandler*, 218 F.3d at 1315.

Hall, citing *United States v. Turner*, 319 F.3d 716 (5th Cir. 2003), erroneously argues that the Government was required to prove the drug attribution amount beyond a reasonable doubt. (Doc. 1 at 77.) In making this assertion, Hall misreads *Turner* and omits fundamental points that contradict his argument. In *Turner*, the Fifth Circuit held that the Government must prove "the existence of a conspiracy, [the defendant's] involvement in it, and the requisite drug quantity . . . involved in the conspiracy beyond a reasonable doubt" in order to obtain a *conviction*. 319 F.3d at 722–23. At sentencing, however, the Fifth Circuit held that the government "need only prove the drug quantity attributable to [the defendant] by a preponderance of the evidence." *Id.* at 723. The Eleventh Circuit applies the same standard of proof.

*See, e.g.*, *United States v. Butler*, 41 F.3d 1435, 1443–44 (11th Cir. 1995) ("The amount attributable to each defendant must be established by a preponderance of the evidence."). Once the Government satisfies its burden, "[t]he trial court must then either (1) make an explicit factual finding as to the allegation; or (2) determine that no such finding is necessary because the matter controverted will not be taken into account in sentencing the defendant." *Id.* at 1444.

As discussed above, the Government satisfied its burden through the facts set forth in both the PSR and the Government's written response to Hall's objection. This Court then explicitly adopted the facts set forth in the PSR, including the drug attribution amount. (Cr. Doc. 523 at 38 (sealed).) Hall's argument that Mr. Appell's performance was deficient because he "fail[ed] to hold the government to its own standards"[17] thus fails because, as explained above, Mr. Appell did not render ineffective assistance for failing to raise a non-meritorious objection.

### 5. Mr. Appell Was Not Ineffective for Failing to Move for a Greater Downward Departure.

Hall next claims that Mr. Appell rendered ineffective assistance by failing to move for a downward departure under U.S.S.G. § 5K1.1. (Doc. 1 at 158–63.) Hall's basis for arguing that defense counsel should have filed a substantial assistance motion is unclear. The Government maintains the sole discretion as to whether to

---

[17] (Doc. 1 at 78.)

file such a motion. *See* U.S.S.G. § 5K1.1 ("*Upon motion of the government* stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.") (emphasis added).

Hall's claim is perhaps that Mr. Appell was ineffective insofar as he failed to argue for a greater departure than that which the Government recommended. Nonetheless, such a claim also lacks merit. Mr. Appell did in fact argue for a greater departure at Hall's sentencing hearing, asking "the Court to show some leniency in this case and . . . to depart even further than [the] Government is asking." (Cr. Doc. 523 at 44 (sealed).) Mr. Appell stressed Hall's cooperation with the Government throughout the investigation and advocated for a sentence of twelve to thirteen years. (*Id.* at 40–44.) The fact that this Court declined to sentence Hall in accordance with Mr. Appell's argument does not render his performance deficient. Moreover, Hall again fails to plead any facts that, if true, establish a reasonable probability that this Court would have granted a greater departure. Consequently, Hall cannot meet either prong of the *Strickland* test (i.e., deficient performance or prejudice).[18]

---

[18] Hall's argument that Mr. Appell was ineffective for failing to "advise" this Court to consider the factors set forth within 18 U.S.C. § 3553(a) falls short for the same reasons. (*See* doc. 1 at 164–72.) After laying out the factors of 18 U.S.C. § 3553(a), Hall alleges that this Court failed to adequately consider such factors and that Mr. Appell's failure to instruct the Court to do so constituted deficient performance. (*Id.*) First, this Court thoroughly considered the § 3553(a) factors. (*See, e.g.*, cr. doc. 523 at 48–51 (sealed).) As discussed above, Mr. Appell was not

6.      **Mr. Appell Was Not Ineffective for Failing to File a Motion to Suppress.**

Hall asserts that Mr. Appell's performance was deficient because he failed to file a motion to suppress evidence obtained in a search and seizure. (Doc. 1 at 249–53.) Hall contends that, upon his arrest on August 4, 2016, law enforcement agents conducted an illegal search and seizure of evidence in and around his property, and that the Government later used such evidence to secure an indictment against Hall. (*Id.* at 250.) However, Hall identifies no specific property that was illegally seized or used against him.

Hall's conclusory allegations of illegally seized evidence cannot support a finding that Mr. Appell was ineffective for failing to object thereto. *See Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) ("Conclusory allegations of ineffective assistance are insufficient.") (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991)). Mr. Appell's performance was not deficient merely because he failed to make an objection for which Hall has provided no factual basis. *See id.* at 998 ("The real problem with [the petitioner's] argument, however, is that he has not suggested any factual basis upon which counsel could have relied in making such a challenge."). Moreover, Hall fails to establish any facts supporting a

---

ineffective for declining to raise a non-meritorious issue. Moreover, Hall fails to specify any factor(s) that would have affected this Court's decision regarding his sentence and thus cannot establish prejudice.

reasonable probability that the outcome of his conviction or sentence would have been different had Mr. Appell objected to the Government's use of the evidence. Hall thus cannot demonstrate that Mr. Appell's performance was inadequate or any resulting prejudice.

### 7. Mr. Brower Was Not Ineffective for Fililng an *Anders* Brief with the Eleventh Circuit.

Finally, Hall alleges that Mr. Brower's performance was deficient because he filed an *Anders* brief with the Eleventh Circuit following his appointment as Hall's appellate counsel. (Doc. 1 at 297–300.) Counsel cannot be found ineffective for filing an *Anders* brief in good faith after a "conscientious investigation." *See Anders*, 386 U.S. at 742. To prevail on this claim, Hall must first show that Mr. Brower "unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Smith v. Robbins*, 528 U.S. 259, 285 (2000). If Hall succeeds in that regard, he must then "show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." *Id.* In other words, Hall must demonstrate that "the arguments [he] alleges his counsel failed to raise were significant enough to have affected the outcome of his appeal." *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000). Hall fails in both regards.

Mr. Brower's performance was not deficient merely because he declined to argue frivolous claims on Hall's behalf. *See id.*, 211 F.3d at 1344 ("Appellate counsel

is not ineffective for failing to raise claims 'reasonably considered to be without merit.'") (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)). Mr. Brower sought to withdraw from representation of Hall because he found no meritorious grounds on which Hall could appeal his sentence. (*See* cr. doc. 604 at 3.) The Eleventh Circuit found that Mr. Brower satisfied his investigative burden and agreed with his assessment, affirming Hall's conviction and sentence. (*See id.*)

The only issue that Hall argues Mr. Brower unreasonably failed to raise on appeal is an objection to the two-point offense level enhancement under U.S.S.G. § 2S1.1(b)(2)(B). (Doc. 1 at 300.) As already explained, this argument lacks merit. Mr. Brower did not act unreasonably in declining to raise the issue on appeal. Furthermore, doing so would not have affected the outcome of the appeal. The Eleventh Circuit conducted its own "independent review of the entire record" and still found "no arguable issues of merit" in Hall's appeal. (Cr. Doc. 604 at 3.) Hall cannot demonstrate that Mr. Brower acted unreasonably in filing an *Anders* brief or that, but for Mr. Brower failing to file a merits brief, the result of Hall's appeal would have been different.

## B.    Substantive Claims

In addition to his claims of ineffective assistance of counsel, Hall makes a number of substantive claims. (*See* doc. 1 at 271–96, 303–306.) Hall's substantive

claims are both procedurally defaulted and barred by the appeal waiver included in his plea agreement. This Court will address each preclusion in turn.

### 1.    Hall's Substantive Claims are Procedurally Defaulted.

A petitioner cannot raise a challenge to his conviction or sentence in a § 2255 motion if he did not raise the same challenge on direct appeal. Hall raised none of the substantive claims that he now brings before this Court in his direct appeal. However, "[a] defendant may overcome this procedural default by showing both cause for his default as well as demonstrating actual prejudice suffered as a result of the alleged error." *Black v. United States*, 373 F.3d 1140, 1142 (11th Cir. 2004); *see also, e.g.*, *Bousley v. United States*, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice' or that he is 'actually innocent.'") (citations omitted).

Presumably, Hall did not raise his substantive claims on direct appeal because Mr. Brower filed an *Anders* brief and the Eleventh Circuit agreed with Mr. Brower's assessment of the merits of Hall's claims. However, Hall makes no attempt to show prejudice resulting from his inability to raise his substantive claims on direct appeal. Rather, Hall solely argues the factual bases for the claims without any explanation as to why the Eleventh Circuit found them lacking in merit. (*See* doc. 1 at 271–96, 303–

306.) Hall consequently fails to overcome the procedural bar to his substantive claims.

Additionally, Hall waived all non-jurisdictional defects in the proceedings when he entered into the plea agreement. *See United States v. Brown*, 752 F.3d 1344, 1347 (11th Cir. 2014) ("A guilty plea, since it admits all elements of a formal criminal charge, waives all non-jurisdictional defects in the proceedings against a defendant.") (quoting *United States v. Fairchild*, 803 F.2d 1121, 1124 (11th Cir. 1986)). Hall makes no allegations of jurisdictional defects. Hall's substantive claims are procedurally barred from review.

### 2.    Hall Waived His Right to Appeal, Except in Limited Circumstances, as Part of His Plea Agreement with the Government.

Furthermore, Hall's plea agreement included an appeal waiver whereby Hall forfeited his right to appeal his conviction or sentence for any reason, with three specific exceptions in the event that (1) this Court imposed a sentence in excess of the statutory maximum; (2) this Court imposed a sentence in excess of the guideline sentencing range; or (3) Hall received ineffective assistance of counsel. (Cr. Doc. 160 at 38–39 (sealed).)

Appeal waivers are enforceable agreements. *United States v. Howle*, 166 F.3d 1166, 1168 (11th Cir. 1999). "A plea agreement is, in essence, a contract between the

Government and a criminal defendant. Among the considerations that a defendant may offer as part of such a contract is waiver of his right to appeal, provided that the waiver is made knowingly and voluntarily." *Id.* When the district court questions the defendant regarding the appeal waiver and the defendant affirms his assent thereto and understanding thereof, the defendant knowingly and voluntarily waives his right to appeal. *See id.* at 1168 ("In this case, Howle's waiver was clearly knowing and voluntary — he was specifically questioned by the district court regarding the waiver of his right to appeal."); *United States v. Buchanan*, 131 F.3d 1005, 1008 (11th Cir. 1997) ("[A]ppeal waivers are valid if knowingly and voluntarily entered. To ensure that that [is] the case, we require that the district court specifically question the defendant concerning the sentence appeal waiver during the Rule 11 colloquy, unless it is otherwise clear from the record that the defendant understood the significance of the waiver."). Once a district court accepts a plea agreement with an appeal waiver, "the plea agreement must stand as written," and reviewing courts should not address the merits of appeals violative of such waivers. *Howle*, 166 F.3d at 1169.

This Court confirmed Hall's understanding of the appeal waiver at the change-of-plea hearing, during which the following exchange occurred:

> THE COURT: Page 39 looks like your signature. Is that your signature on page 39?
>
> DEFENDANT HALL: Yes, sir.

> THE COURT: When you signed it there, were you acknowledging that you had waived or given up your right to appeal or to file a post conviction petition?
>
> DEFENDANT HALL: Yes, sir.

(Cr. Doc. 522 at 54–55 (sealed).) This Court also repeatedly confirmed that Hall was entering into the plea agreement of his own volition. (*See, e.g.*, *id.* at 3–4, 15–19, 56–57.) Hall's appeal waiver was plainly knowing and voluntary. Accordingly, this Court accepted the plea agreement in full. (*Id.* at 57–58.)

As previously noted, Hall's sentence was well below the statutory maximum and within the guideline range,[19] and this Court has already addressed Hall's ineffective assistance of counsel claims. Consequently, Hall's substantive claims do not fall within one of the enumerated exceptions of the plea agreement. As a result, Hall's plea agreement bars his present claims from review such that this Court need not address the merits of his arguments.[20]

---

[19] (*See* cr. doc. 523 at 50 (sealed); cr. doc. 414 at 2); 21 U.S.C. § 841(b)(1)(B).

[20] Lastly, Hall alleges violations of his Fourth and Fifth Amendment rights. (Doc. 1 at 79–110, 173–76, 249–53.) These arguments too fall flat. In addition to being barred by his appeal waiver, Hall's Fourth Amendment claim is barred by his knowing and voluntary guilty plea. *Brown*, 752 F.3d at 1347. Moreover, Hall explicitly waived his Fifth Amendment privilege against self-incrimination as part of his plea agreement. (Cr. Doc. 160 at 34–35 (sealed).) Hall claims that he was "compelled to testify" and thus guaranteed immunity. (Doc. 1 at 79.) In reality, though, Hall knowingly and voluntarily entered a plea agreement in which he exchanged his testimony for an opportunity to receive a lesser sentence. (*See* cr. doc. 160 at 34–36 (sealed).) How Hall came to believe that his cooperation with the Government would provide him "immunity" for any statements made in accordance therewith is unclear and contradictory to the actual terms of his plea agreement, which specifically state that Hall's cooperation was in exchange for the possibility of the Government filing a motion for downward departure. (*See id.*)

## IV.    Conclusion

For the foregoing reasons, Hall's § 2255 motion to vacate, set aside, or correct a sentence is due to be denied and this case dismissed with prejudice.

Rule 11 of the Rules Governing § 2255 Proceedings requires the Court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. *See* Rule 11, Rules Governing § 2255 Proceedings. This Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-EL v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack*, 529 U.S. at 484). This Court finds that Hall's claims do not satisfy either standard.

A separate order consistent with this opinion will be entered.

**DONE** AND **ORDERED** ON SEPTEMBER 16, 2022.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

211913